# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LAWRENCE J. DEVINE, )
)
        Plaintiff, )
)
v. ) C.A. NO.: N15C-03-016 AML
)
MHC WATERFORD ESTATES, )
L.L.C. and MHC OPERATING ) JURY TRIAL OF 12 DEMANDED
LIMITED PARTNERSHIP )
)
        Defendants. )

Submitted: September 18, 2017
Decided: October 10, 2017

**Upon Defendants' Motion for Summary Judgment: Denied**

## MEMORANDUM OPINION

Joseph J. Rhoades, Esquire, and Stephen T. Morrow, Esquire, of RHOADES & MORROW LLC, Wilmington, Delaware, Attorneys for Lawrence J. Devine.

Kelly E. Rowe, Esquire, of REILLY, JANICZEK, MCDEVITT, HENRICH & CHOLDEN, P.C., Wilmington, Delaware, Attorney for Waterford Estates, L.L.C.

**LeGrow, J.**

Plaintiff Lawrence Devine, a resident of Waterford Estates mobile home park, alleges Waterford management acted negligently and breached a rental agreement by failing to fix a stagnant water problem on his property. Devine contends the accumulated water froze and he slipped and fell on his icy sidewalk, resulting in multiple injuries. MHC Waterford Estates, L.L.C. and MHC Operating Limited Partnership (collectively "Defendants"), however, contend the ice on which Devine slipped formed as a result of a snow storm and was unrelated to the stagnant water problem.

In this motion, Defendants seek summary judgment on all of Devine's claims. The motion presents two primary issues: (1) does Devine's contract with Waterford bar his negligence claim, or is there an independent statutory or common law duty of a landlord to correct the condition at issue here; and (2) may the Court determine as a matter of law that Devine's claims are barred by acquiescence, lack of notice, or assumption of risk. As set forth below, Devine's negligence claim may proceed, notwithstanding the contract, and disputed factual issues preclude any judgment on the basis of the acquiescence, notice, or assumption of risk defenses Defendants raise.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the complaint and the record presented by the parties, drawing all reasonable inferences in favor of Devine, who is the non-moving party, and resolving disputed factual issues in Devine's favor. Beginning in 2008, Lawrence Devine owned or occasionally occupied 420 Ranee Loop, in Bear, Delaware, part of the Waterford Estates mobile home park.[1] Defendants manage the mobile home park and lease lots to mobile home owners like Devine. From the time he moved in, Devine notice the yard continually was saturated by water.[2] During summer time, Devine complained the ground was so saturated that a lawn chair would sink in the mud if sat upon.[3] The saturation continued during the winter months.[4]

On multiple occasions, Devine called and visited the rental office to ask Defendants' management "if something could be done to correct the problem."[5] Devine and his late mother, who also lived at 420 Ranee Loop, attended a meeting with a Waterford Estates representative to discuss the issue, but management never followed up after their meeting.[6] Beginning in 2012, every time Devine took his rent check to the rental office he would ask management "when do you plan on

---

[1] Pl.'s Resp. to Def.'s Mot. Summ. J. 4.
[2] *Id.* at 5.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 5-6.

2

fixing this?"[7] Despite Devine's continued complaints, Defendants' management never addressed the water saturation on the lot. Another resident, Henry Young, explained that Defendants' management was "sort of slow at taking care of business."[8]

On January 21, 2014, approximately twelve inches of snow fell in Bear. On January 22, 2014, Devine began shoveling the snow off his handicap ramp, making his way down to the sidewalk outside his home.[9] When Devine reached the sidewalk, he encountered a thick layer of ice on the sidewalk under the snow. After clearing the snow from the sidewalk, Devine began spreading rock salt along the sidewalk in order to provide traction for himself and any visitors to the home.[10] Because the ground along the sidewalk was so saturated, Devine was forced to stand on the sidewalk while he spread the rock salt.

As Devine placed his foot on the sidewalk, he slipped and fell on the ice, suffering multiple neck and back injuries.[11] Devine later filed this action claiming: (1) Defendants negligently failed to correct the stagnant water, which then froze and proximately caused Devine's injuries; (2) Defendants breached the rental agreement by failing to regrade the lot in order to prevent saturation; and (3) Defendants breached their "contractual duty of fair dealing" in connection to fixing

---

[7] *Id.* at 6.
[8] *Id.* at 7.
[9] *Id.* at 1.
[10] *Id.* at 2.
[11] *Id.* at 2-3.

the water saturation.[12] Defendants filed the pending motion for summary judgment on July 28, 2017. Devine filed his response on August 25, 2017. In his response, Devine withdrew the breach of duty of fair dealing claim. The Court heard argument on the pending motion on September 18, 2017.

## ANALYSIS

Summary judgment should be awarded if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[13] When considering a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party.[14] The Court will accept "as established all undisputed factual assertions . . . and accept the non-movant's version of any disputed facts. From those accepted facts[,] the [C]ourt will draw all rational inferences which favor the non-moving party."[15] A party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[16] If the movant makes such a showing, the burden then shifts to the non-moving party to submit sufficient evidence to show that a

---

[12] Comp. ¶ 24.
[13] Super. Ct. Civ. R. 56(c).
[14] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995); *Judah v. Del. Trust Co.*, 378 A.2d 624, 632 (Del. 1977).
[15] *Marro v. Gopez*, 1994 WL 45338, at *1 (Del. Super. Jan 18, 1994) (citing *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992)).
[16] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).

4

genuine factual issue, material to the outcome of the case, precludes judgment before trial.[17]

Defendants seek summary judgment on Devine's negligence claim on the basis that it is precluded by law because the parties' relationship is governed by a contract—the rental agreement. Second, Defendants argue Devine's breach of contract claim is estopped by Devine's acquiescence to the stagnant water problem. Even if Devine's claims survive those arguments, Defendants contend those claims are barred because Devine failed to establish that Defendants had any notice of the icy condition that caused the injury, or because Devine assumed the risk of injury by stepping onto the icy sidewalk to clear the snow. In my view, disputed issues of fact preclude summary judgment on all claims except the fair dealing claim already withdrawn by Devine.

## I.     The parties' contract does not preclude Devine's negligence claim.

Defendants argue that Devine cannot maintain his action in tort because "under Delaware law, where an action is based entirely on a breach of terms of a contract between the parties, and not in violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort."[18] Defendants argue that any duty Defendants arguably owed Devine arose solely from the parties' rental agreement. The relevant law provides otherwise.

---

[17] *Id.*; *see also Brzoska*, 668 A.3d at 1363.

[18] *Greenstar, LLC v. Heller*, 934 F.Supp.2d 672, 696 (D. Del. 2013).

Under common law, a landlord's failure to maintain premises in a reasonably safe condition is sufficient to prove ordinary negligence.[19] This long-established duty provides an independent basis for Devine's negligence claim.[20] In addition, 25 *Del. C.* § 7006(a)(13)a., which is part of the Manufactured Homeowners and Community Owners Act (the "Act"), imposes a statutory duty on landlords to "[m]aintain and regrade the lot area where necessary and in good faith to prevent the accumulation of stagnant water thereon and to prevent the detrimental effects of moving water."[21] Although one purpose of Section 7006 is to prescribe mandatory provisions for rental agreements, this Court has held the section also imposes an independent duty to regrade the property when necessary.[22]

The interpretation of Section 7006 as creating a statutory duty independent of the parties' contract is consistent with Section 7001, which describes the Act's purpose and policies. Section 7001 provides "[t]his subchapter must be liberally construed and applied to promote its underlying purpose and policies, which are: . . . *to clarify and establish . . . the rights and obligations* of manufactured community

---

[19] *Norfleet v. Mid-Atlantic Realty Co., Inc.*, 2001 WL 695547, *4 (Del. Super. April 20, 2001).
[20] *See Young v. Saroukos*, 185 A.2d 274 (Del. Super. 1962).
[21] 25 *Del. C.* § 7006(a)(13)a.
[22] *Weyl v. Bay City Inc.*, 2008 WL 5264879, *3 (Del. Super. Nov. 25, 2008) ("The Act places the responsibility for re-grading a lot on the landlord when it is necessary to prevent the accumulation of stagnant water on the lot.").

6

owners (landlords), manufactured home owners (tenants), and residents of manufactured home communities . . ."[23]

In view of the independent duties Defendants owed Devine under common law and the Act, I conclude Devine's action is not based entirely on the terms of the rental agreement. As a result, Devine's tort claim is not barred.

## II. Whether Devine's breach of contract claim is estopped by acquiescence is a disputed issue of fact for the jury.

Defendants next argue that the equitable doctrine of acquiescence bars Devine's breach of contract claim. Defendants assert that because Devine knew of the stagnant water problem, and nonetheless continued to pay rent for six years, he effectively acquiesced to the water saturation, thereby relieving Defendants of any liability for breach of contract.

The Court of Chancery has held that acquiescence:

> arises when a party complaining of an act (1) has full knowledge of his rights and all material facts and (2) remains inactive for a considerable time, or freely gives recognition to the act, or conducts himself in a manner inconsistent with any subsequent repudiation of the act, thereby leading the other party to believe that the act has been approved.[24]

Assuming for argument's sake that Devine had full knowledge of his rights and all material facts, the question of whether Devine remained inactive, gave recognition to the act, or conducted himself in a manner inconsistent with his

---

[23] 25 *Del. C.* § 7001(a) (emphasis added).
[24] *Tenneco Automotive Inc. v. El Paso Corp.*, 2004 WL 3217795, *12 (Del. Ch. Aug. 26, 2004).

repudiation of the act remains a disputed factual issue. On one hand, Defendants claim Devine "satisf[ied] his portion of the rental agreement" by continuing to pay rent, thereby presumably giving recognition to the water saturation.[25] On the other hand, Devine contends he repeatedly complained to Defendants about the saturation by calling management and going into the office to ask for something to be done to fix the condition.[26] Additionally, Devine argues he complained about the water saturation to management every time he took a rent check to Defendants' office.[27] As a result, whether Devine's conduct constituted acquiescence is a factual issue for the jury to resolve after hearing and weighing the evidence and the witnesses' credibility.

### III. The rental agreement did not require written notice, and whether Defendants had actual or constructive notice is an issue of fact for the jury.

Defendants argue that notice is a necessary element of a negligence claim and Devine has not established Defendants' notice of the sidewalk's icy condition. Defendants contend that the snowstorm from the day before Devine's fall caused snow and ice to accumulate on the sidewalk, and point to *Elder v. Dover Downs, Inc.*,[28] in which this Court held "[a] general awareness of a dangerous condition or that water can freeze or re-freeze is legally insufficient to constitute or create an

---

[25] Def.'s Mot. Summ. J. 6.
[26] Pl.'s Resp. to Def.'s Mot. Summ. J. 19.
[27] *Id.*
[28] 2012 WL 2553091, *5 n.41 (Del. Super. July 2, 2012).

8

inference of constructive notice of the particular condition that caused plaintiff's injury [from a slip and fall on ice]." Defendants conclude that, under *Elder*, Defendants' knowledge of the snowstorm is insufficient to establish constructive notice of the icy condition of the sidewalk.

What caused the ice to form on the sidewalk, however, is a disputed fact. Devine contends the ice was unrelated to the snowstorm and was caused when temperatures dropped and caused the standing water to freeze. Defendants, on the other hand, argue the ice was caused by snow melting and refreezing during and after the snowstorm. In the procedural posture of this motion, the Court must view the facts in the light most favorable to Devine and infer that the ice formed when the standing water froze. Devine testified he repeatedly notified Defendants that standing water was present on the property throughout the year. The Court (and jury) reasonably may infer that Defendants had actual notice of the standing water and, at a minimum, constructive notice of the risk that the standing water could freeze in cold weather. Consequently, whether the Defendants had notice of the icy condition of the sidewalk is a factual determination for the jury.

Defendants also argue in their reply brief that notice was deficient because the rental agreement required written notice.[29] The portion of the rental agreement on which Defendants rely provides: "Management is required to . . . maintain all

---

[29] Rental Agreement 6 (Ex. D to Pl.'s Resp. to Def.'s Mot. Summ. J.).

water, electric, plumbing, gas, sewer, septic, and other *utilities* and services provided by management in good working order, repairing said utilities and services within the earlier of forty-eight (48) hours after *written notification* of the utilities or service problem . . ."[30] This provision does not apply to Devine, at least under his theory of the case. The rental agreement only requires a resident to provide written notice to management for utility service problems. Devine contends the stagnant water in this case is not related to a utility service problem. Devine therefore was not obligated to give written notice of the water accumulation.

## IV. Whether Devine assumed the risk of clearing the sidewalk is a disputed issue of fact for the jury.

Finally, Defendants argue Devine's claim should be dismissed because he assumed the risk of removing the snow from his sidewalk. Defendants contend that Devine either expressly assumed the risk of snow removal through the rental agreement, or, in the alternative, was contributorily negligent through secondary assumption of risk because he knowingly engaged in a risk that he could have avoided. The rental agreement provides: "Resident shall be responsible for the removal of snow and ice from the walkways and driveways of the resident's manufactured home site. Resident, and not Management, shall be solely responsible for any and all claims resulting from Resident's failure to maintain

---

[30] *Id.* (emphasis added).

10

Resident's manufactured home site . . ."[31] Defendants' argument that Devine expressly assumed the risk through the rental agreement is misplaced for two reasons. First, this contractual provision addresses, at most, which party has the duty to remove ice in the first place, not assumption of risk. Second, even if the provision bears on assumption of the risk, if it later is determined that the ice formed as a result of a stagnant water problem that Defendants failed timely to correct, then Devine's contractual duty to remove snow and ice under normal circumstances is irrelevant because he did not assume the risk of Defendants' negligence or contractual breach.

Defendants' secondary assumption of risk argument also is based on controverted issues of fact. Defendants argue that Devine could have avoided the risk of standing on the icy sidewalk while clearing a path, suggesting Devine instead could stand on the ground along the sidewalk. Devine, however, argues the ground along the sidewalk was so saturated that he "had no choice" but to stand on the sidewalk to clear away the ice. Viewing the facts in this light, there is a reasonable basis to conclude Devine could not avoid the risk of standing on the sidewalk as he cleared the path. Consequently, because the issue of whose duty it was to remove the ice, and whether Devine had the option to stand on the ground

---

[31] Rules and Regulations 11 (Ex. O to Pl.'s Resp. to Def.'s Mot. Summ. J.).

11

along the sidewalk, are both controverted issues of fact for the jury, Defendants are not entitled to summary judgment.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment as to Counts I and II is **DENIED**. Defendant's Motion as to Count III is moot because that count was dismissed by stipulation of the parties.

**IT IS SO ORDERED.**